# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
Filed: January 24, 2022

| | | |
|---|---|---|
| * * * * * * * * * * * * * * * | | |
| RALPH HARPER, | * | No. 19-941 |
| | * | |
| Petitioner, | * | Special Master Sanders |
| v. | * | |
| | * | Attorneys' Fees and Costs; |
| SECRETARY OF HEALTH | * | Reasonable Basis; Influenza ("Flu") |
| AND HUMAN SERVICES, | * | Vaccine; Pneumococcal Conjugate ("PCV- |
| | * | 13") Vaccine; Transverse Myelitis ("TM"); |
| Respondent. | * | Significant Aggravation |
| * * * * * * * * * * * * * * * | | |

*David Alexander Tierney,* Rawls Law Group, Richmond, VA, for Petitioner.
*Sarah Christina Duncan*, U.S. Department of Justice, Washington, DC, for Respondent.

## ATTORNEYS' FEES AND COSTS DECISION[1]

On June 28, 2019, Ralph Harper ("Petitioner") filed a petition for compensation pursuant to the National Vaccine Injury Compensation Program ("Program" or "Vaccine Program").[2] Petitioner alleged that the pneumococcal conjugate ("PCV-13") and influenza ("flu") vaccines he received on September 28, 2016, caused him to develop "transverse myelitis[3] [("TM")] which resulted in significant extremity weakness, paralysis, and other neurological sequelae." Pet. at 1, ECF No. 1. Alternatively, Petitioner alleged that his vaccinations significantly aggravated a pre-existing "immunologic, neurologic, psychiatric, or genetic disorder," and "result[ed] in him developing TM." *Id*. On September 15, 2020, Petitioner filed a motion to dismiss indicating that a "status conference with the Special Master, as well as investigation of prior similar cases has demonstrated to [P]etitioner that he will be unable to prove that he is entitled to compensation." Pet'r's Mot. to Dismiss, ECF No. 17. I granted Petitioner's motion and dismissed his claim on October 29, 2020. *See* Decision, ECF No. 18.

---

[1] This Decision shall be posted on the United States Court of Federal Claims' website, in accordance with the E-Government Act of 2002, 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). **This means the Decision will be available to anyone with access to the Internet**. In accordance with Vaccine Rule 18(b), a party has 14 days to identify and move to delete medical or other information that satisfies the criteria in § 300aa-12(d)(4)(B). Further, consistent with the rule requirement, a motion for redaction must include a proposed redacted Decision. If, upon review, I agree that the identified material fits within the requirements of that provision, such material will be deleted from public access.
[2] The Program comprises Part 2 of the National Childhood Vaccine Injury Act of 1986, 42 U.S.C. §§ 300aa-10 et seq. (hereinafter "Vaccine Act," "the Act," or "the Program").
[3] Transverse myelitis is "myelitis in which the functional effect of the lesions spans the width of the entire cord at a given level." *Dorland's Illustrated Medical Dictionary* 1, 1218 (32nd ed. 2012) [hereinafter "*Dorland's*"]. Myelitis is "inflammation of the spinal cord, often part of a more specifically defined disease process." *Dorland's* at 1218.

On February 25, 2021, Petitioner filed a motion for attorneys' fees and costs, seeking **$20,273.40** in attorneys' fees and **$781.42.00** in costs for his attorney, David Tierney. Pet'r's Mot. for Attorneys' Fees & Costs at 4, ECF No. 22 [hereinafter Pet'r's Mot. for AFC]. On March 10, 2021, Respondent filed his response in opposition to Petitioner's motion, and argued that Petitioner's claim, "lacked a reasonable basis when filed, and reasonable basis was never established." Resp't's Resp. at 9, ECF No. 23. Petitioner filed a reply brief on April 2, 2021, and countered that "there is more than a scintilla of evidence that his flu and/or conjugate vaccines caused his [TM]." Pet'r's Reply at 4, ECF 25. Therefore, Petitioner argued that "he has brought his petition with a reasonable basis" and is entitled to reimbursement of fees and costs. *Id.* For the reasons stated below, I find that Petitioner has not satisfied the statutory requirements for an award of attorneys' fees and costs; therefore, I **DENY** Petitioner's motion.

### I. Procedural History

Petitioner filed his petition for compensation on June 28, 2019. Pet. at 1. On July 12, 2019, Petitioner submitted affidavits from himself and his wife, his vaccination record, and medical records. Pet'r's Exs. 1–5, ECF Nos. 8-1–8-13. Petitioner filed a statement of completion on August 14, 2019. ECF No. 9.

Respondent did not file a Rule 4(c) report, but instead filed a motion for order to show cause on February 10, 2020. *See generally* Resp't's Mot., ECF No. 11. Respondent's motion "question[ed] whether there is a reasonable basis to proceed with this claim and respectfully move[d] this [C]ourt to issue an order to show cause why this case should not be dismissed." *Id.* at 4. Petitioner filed a response on February 24, 2020, and argued that "Respondent [had] dismissed evidence" that is sufficient to establish reasonable basis in this case. Pet'r's Resp. at 1, ECF No. 13.

I held a status conference to discuss Respondent's motion with the parties on August 13, 2020. *See* Min. Entry, docketed Aug. 13, 2020. Petitioner requested thirty days to decide how to proceed, and on September 15, 2020, Petitioner filed a motion to voluntarily dismiss his claim. Pet'r's Mot. to Dismiss, ECF No. 17. In his motion, Petitioner noted he is "unable to prove that he is entitled to compensation in the Vaccine Program." *Id.* at 1. He continued that "to proceed further would be unreasonable and would waste the resources of the Court, the [R]espondent, and the Vaccine Program." *Id.* I issued a Decision dismissing Petitioner's case on October 29, 2020. Decision, ECF No. 18.

On February 25, 2021, Petitioner filed a motion for attorneys' fees and costs for David Tierney. Pet'r's Mot. for AFC, ECF No. 22. Petitioner seeks a total award of **$21,054.82** in fees and costs. *Id.* at 1. Respondent filed his response to Petitioner's motion on March 10, 2021, objecting to an award of attorneys' fees and costs in this case and arguing that Petitioner's claim lacked a reasonable basis when filed. Resp't's Resp. at 9, ECF No. 23. Petitioner filed a reply brief on April 2, 2021. Pet'r's Reply, ECF 25. This matter is ripe for consideration.

### II. Medical History

Prior to his vaccination, Petitioner had a medical history that included a May 20, 2015

complaint of ongoing "back pain that radiates into his hips bilaterally." Pet'r's Ex. 4-1 at 14, ECF No. 8-4. Four months later, a review of symptoms during a September 10, 2015 examination, included "fevers, chills, . . . leg pain when walking, . . . muscle pain, muscle weakness, . . . and low back pain." *Id.* at 33. Petitioner's treaters noted a "history somewhat consistent with neurogenic claudication.[4]" *Id.* at 34.

Petitioner's vaccination record documents that Petitioner purchased flu and PCV-13 vaccines from Walgreens on September 28, 2016. Pet'r's Ex. 3, ECF No. 8-3. Petitioner's medical record from Renown Health also documents a PCV-13 vaccination on September 28, 2016. Pet'r's Ex. 4-1 at 266. However, Renown Health records also state that Petitioner received pneumococcal polysaccharide and flu vaccines on October 15, 2016. *Id.* at 268.

On at least four separate occasions in November and December of 2016, Petitioner sought re-fills for prescriptions to treat existing conditions, but there is no record indicating complaints of or examination results that include symptoms consistent with TM. *Id.* at 277, 282, 288, 295.

Petitioner sought clearance for a complete hip replacement to treat his chronic right hip pain on February 2, 2017, but he reported no other concerns at that time. *Id.* at 306–15. On February 13, 2017, Petitioner presented to urgent care with complaints of shakiness, body aches, and lightheadedness following a dental procedure under local anesthesia. *Id.* at 330–31. Petitioner was assessed with an adverse reaction to medication. *Id.* at 331. The records indicate that Petitioner reported a complete resolution of symptoms following a Benadryl[5] injection during the visit. *Id.*

On May 16, 2017, Petitioner was transported to Renown Main Hospital by ambulance, following cramping from his ribcage into his legs that developed into paralysis. *Id.* at 387. Renown Health medical records note that "[t]he past week, [Petitioner] has noticed occasional episodes where he was bending down to pick something up and noticed a transient [sic] and resolved when he stood erect. [Petitioner] was asymptomatic prior to this week." *Id.* Petitioner reported "that whenever he would bend over, he would feel some lower abdominal cramps and also cramps in his thigh and was feeling lightheaded, but when he would stand up, everything would resolve and before that, he was totally normal." *Id.* at 395. Petitioner's May 20, 2017 discharge paperwork detailed that his "MRA of the spinal cord notes T6 spinal cord infarction,[6] possible transverse myelitis." *Id.* at 394. Treaters noted "[t]he cause is quite unclear as there is no structural obvious inflammatory cause." *Id.* at 393. Petitioner's TM diagnosis was re-affirmed on December 17, 2017,

---

[4] Neurogenic claudication is "claudication accompanied by pain and paresthesias in the back, buttocks, and lower limbs, relieved by stooping or sitting; it is usually caused by lumbar spinal stenosis that may be a mechanical disturbance due to posture, and less often by ischemia of the cauda equina." *Dorland's* at 369. Claudication is "limping or lameness." *Id.*
[5] Benadryl is "trademark for preparations of diphenhydramine hydrochloride." *Dorland's* at 208. Diphenhydramine hydrochloride is "the hydrochloride salt of diphenhydramine, used for the symptomatic treatment of allergic symptoms, for the treatment of anaphylaxis, parkinsonism or drug-induced extrapyramidal disorders, and motion sickness or other causes of nausea, vomiting, or vertigo[.]" *Id.* at 523.
[6] A spinal cord infarction is "an area of coagulation necrosis in spinal tissue due to local ischemia resulting from obstruction of circulation to the area, most commonly by a thrombus or embolus." *Dorland's* at 934.

after a spinal cord infarction was effectively ruled out. Pet'r's Ex. 4-5 at 276, ECF No. 8-8.[7]

### III. Petition and Affidavits

Petitioner has provided three fact statements in the form of his petition and affidavits from himself and his wife. *See* Pet.; Pet'r's Ex. 1, ECF No. 8-1; Pet'r's Ex. 2, ECF No. 8-2. The petition in this case was Petitioner's first filed account of the progression of his TM. *See generally* Pet. He began his chronology with his vaccinations on September 28, 2016. Pet. at 1. He then noted that "[o]n February 13, 2017[, he] began feeling generally unwell, worn down, and tired, with symptoms of generalized fatigue, body aches and fever; however, these symptoms resolved fairly quickly." *Id.* Petitioner next described his May 2017 urgent care visit and hospitalization, during which he was examined for myelitis consistent with his complaints of paralysis and numbness. *Id.* Petitioner indicated in his petition that he denied any recent illness at that time. *Id.* Petitioner noted his preliminary TM diagnosis during his hospitalization from May 16–20, 2017. *Id.* His petition continued with events leading up to the confirmation of his diagnosis, his treatment, and rehabilitation. *Id.*

Petitioner's affidavit was filed on July 12, 2019, and it includes additional information about symptoms he experienced during the time between his vaccination and urgent care visit in May of 2017. Pet'r's Ex. 1. Specifically, Petitioner stated that "[o]n three different times within three months of the vaccinations, [he] experienced a painful tightening of [his] torso and a sense of real weakness." *Id.* at 1. He continued that the pain and weakness "would last about [two] to [three] minutes, then it would just go away and [he] did not think much about it." *Id.* Petitioner then described how several months later, in May of 2017, he "experienced the same painful tightening from [his] ribcage down both legs." *Id.* Petitioner's wife called for emergency personnel, and Petitioner was transported to the hospital for treatment. *Id.* He stated that "[a]fter about [ten] minutes, it began to dissipate, and [he] realized that [he] had no movement or feeling from [his] ribcage down both legs." *Id.* Petitioner noted that initially his treaters believed that he had suffered a spinal stroke, but they were unable to confirm that diagnosis. *Id.* at 2. He described how the Renown Neurology Department "took an interest in [him] and [his] diagnosis of a spinal stroke because of the extreme rareness of this type of stroke." *Id.* He noted that they diagnosed him with TM in November of 2017. *Id.*

Mrs. Harper, Petitioner's wife, also wrote an affidavit on her husband's behalf. Pet'r's Ex. 2. Mrs. Harper stated that post vaccination, her husband "did not mention to [her] that he experienced anything negative." *Id.* at 1. She noted that he "began to feel unwell and by May of 2017, he experienced paralysis and numbness in his legs." *Id.*

---

[7] Petitioner's medical records provide a complete account of his clinical progression and treatment. However, Respondent does not dispute Petitioner's diagnosis or the duration and severity of his condition for the purposes of questioning reasonable basis and opposing attorneys' fees and costs. Respondent's argument rests on an assertion that Petitioner's TM did not manifest within a medically acceptable timeframe following Petitioner's vaccination to be vaccine-caused. I have reviewed Petitioner's complete medical record, but I have only referenced in this Decision medical records that are relevant to a determination of the onset of Petitioner's condition and likewise to reasonable basis.

### IV. Arguments regarding Petitioner's Motion for Attorneys' Fees and Costs

   *a. Respondent's Argument*

Respondent's arguments against Petitioner's receipt of attorneys' fees are first articulated in his motion for order to show cause. *See generally* Resp't's Mot., ECF No. 11. Respondent argued that all of the evidence presented by Petitioner supports a symptom onset of seven months post vaccination. This time frame, Respondent continued, "falls far outside a medically acceptable interval [for Petitioner's TM] to be causally connected [to his vaccination]." *Id.* at 4. In support of this argument, Respondent noted that "Petitioner has provided no medical records documenting any symptoms of TM [from September 28, 2016, the date of his vaccination,[8] to his May 2017 hospitalization and diagnosis]." *Id.* at 1. Respondent also noted that Petitioner's account of tightening within his torso and weakness is found only within his own affidavit. *Id.* at 2. Petitioner's own word, Respondent argued, should be afforded no weight. *Id.* Consequently, Respondent argued that based on Petitioner's medical records, the gap between vaccination and symptom onset is inconsistent with the Mayo Clinic literature that states TM "develop[s] over a few hours to a few days and may sometimes progress gradually over several weeks." *Id.* at 3 (citing https://www.mayoclinic.org). Lastly, Respondent noted that petitioners in the Program have been consistently denied entitlement when the "onset of a demyelinating condition [occurs] more than eight weeks after vaccination." Resp't's Mot. at 3.

In response to Petitioner's motion for attorneys' fees and costs, Respondent relies mainly on his previously made arguments regarding reasonable basis. Resp't's Resp., ECF No. 23. Respondent also notes that Petitioner's medical records indicate that he was "asymptomatic" and "totally normal" prior to his visit to urgent care on May 15, 2017. *Id.* at 4 (citing Pet'r's Ex. 4-1 at 387). Petitioner in this case, according to Respondent, "lacked reasonable basis when [he] filed, and reasonable basis was never established." Resp't's Resp. at 10. Therefore, Respondent argues Petitioner's motion for fees should be denied. *Id.*

   *b. Petitioner's Argument*

Petitioner's response to Respondent's motion for order to show cause identified "evidence [dismissed by Respondent] that [Petitioner's] symptoms began earlier." Pet'r's Resp. at 1, ECF No. 13. First, Petitioner noted that he did not report the torso tightening and weakness symptoms to his medical provider because "he did not think much about it." *Id.* Petitioner reasoned that the fact "he would not complain about something he did not think much about should not be surprising." *Id.* He continued that this logic is further corroborated by Petitioner's spouse, who stated "Petitioner did not mention experiencing anything negative to her." *Id.* at 2.

Next, Petitioner acknowledged that he told providers at Renown Health that he was asymptomatic prior to his urgent care visit, but he explained that he was referring specifically to the paralysis that was the motivation behind his decision to seek treatment. *Id.* Petitioner further

---

[8] The medical record indicates that Petitioner also received pneumococcal polysaccharide and influenza vaccines on October 15, 2016. However, neither party considers either of these vaccines on this date in their arguments, and such vaccinations do not affect whether Petitioner's September 28, 2016 PCV-13 and flu vaccines caused him to suffer from TM.

5

explained that he made these statements "in a time of duress." *Id.* He asked that his clarifying statements be awarded at a minimum, "little weight." *Id.*

Lastly, Petitioner referenced his February 13, 2017 "complaint of shakiness, body aches, and lightheadedness." *Id.* Although Petitioner's medical record noted "complete resolution of his symptoms after receiving a Benadryl injection," Petitioner disputed the conclusion that these symptoms were the result of an allergic reaction. *Id.* at 3. He identified symptoms of an allergic reaction, e.g., urticaria,[9] erythema,[10] intense itching, and respiratory distress. *Id.* Petitioner also described a "more severe life-threatening anaphylactic response[ to] include symptoms of apnea,[11] hypotension,[12] and loss of consciousness." *Id.* He argued that his complaints are not indicative of an allergic reaction, but instead are more consistent with "pain, weakness, and sensory alterations," which are symptoms of TM. *Id.* Petitioner did not dispute Respondent's assertion that "the Court has previously held that onset of a demyelinating condition more than eight weeks after vaccination is not medically feasible." *Id.* Instead, "Petitioner merely contests the dismissal of two earlier instances of evidence of symptoms of [TM], particularly of Petitioner's claims of abdominal tightening and weakness soon after the vaccination." *Id.*

Despite Respondent's motion to show cause, in which he "question[ed] whether there is a reasonable basis to proceed," Petitioner does not address this issue in his motion for attorneys' fees and costs. *See generally* Pet'r's Mot., ECF No. 22. Following Respondent's response and opposition, Petitioner asserts in his reply that he

> had a reasonable basis to bring the petition because he attested to first symptoms in his affidavit which were earlier than his medical record reports, his medical record includes potential symptoms earlier than May 15, 2017, and there is at least one scientific paper which presents the possibility that [TM] symptoms may first emerge as much as several years after vaccination.

Pet'r's Reply at 1–2, ECF No. 25. Petitioner continues that "this amount of evidence – even if not persuasive – amounts to more than was presented in *Cottingham v. HHS*, 971 F.3d 1337 (Fed. Cir. 2020), and is therefore, more than a scintilla of evidence." *Id.* at 2.

Petitioner argues that "the evidence contemplated in *Cottingham* consisted only of two items: (1) the medical record which showed symptoms consistent with the injury alleged, and (2) the information provided on the insert which comes with the implicated vaccine listing symptoms like those suffered by that petitioner. *Cottingham* at 1346." *Id.* In his case, Petitioner asserts that the medical record clearly supports his diagnosis and that his condition developed post vaccination. *Id.* Therefore, Petitioner reasons, the issues in his case relate to the onset of his symptoms. Specifically: "(1) [w]hether or not [P]etitioner demonstrated first symptoms of [TM] more than a week prior to his May 15, 2017 hospital visit, and, if not, (2) is a delay of symptom onset of nearly

---

[9] Urticaria is "a vascular reaction in the upper dermis, usually transient, consisting of localized edema caused by dilatation and increased capillary permeability." *Dorland's* at 2011.
[10] Erythema is "redness of the skin produced by congestion of the capillaries." *Dorland's* at 643.
[11] Apnea is "cessation of breathing." *Dorland's* at 116.
[12] Hypotension is "1. abnormally low blood pressure; seen in shock but not necessarily indicative of it. 2. abnormally low tension or pressure within any fluid-containing bodily structure." *Dorland's* at 906.

seven months too long to attribute Petitioner's [TM] to either of the vaccines." *Id.* at 3. He argues that his affidavit is more than a mere scintilla of evidence that his symptoms developed prior to May 15, 2017, and even if his affidavit is not enough, he has located one paper that suggests in the abstract that TM could develop several years post vaccination. *Id.*

V. **Legal Standard and Analysis**

   a. *Good Faith*

Under the Vaccine Act, an award of reasonable attorneys' fees and costs is presumed where a petition for compensation is granted. Where compensation is denied, or a petition is dismissed, as it was in this case, a special master may award fees and costs for an unsuccessful petition if "the petition was brought in good faith and there was a reasonable basis for the claim for which the petition was brought." 42 U.S.C. § 300aa–15(e)(1); *see also Sebelius v. Cloer*, 569 U.S. 369, 376 (2013). Petitioners act in "good faith" if they filed their claims with an honest belief that a vaccine injury occurred. *Turner v. Sec'y of Health & Hum. Servs.*, No. 99-544V, 2007 WL 4410030, at *5 (Fed. Cl. Spec. Mstr. Nov. 30, 2007). Respondent does not contest that this petition was filed in good faith. *See, e.g.*, Resp't's Resp. Without evidence of bad faith, I find that the good faith standard is met in this case.

   b. *Reasonable Basis*

To receive an award of fees and costs, a petitioner must also demonstrate the claim was brought with a reasonable basis through objective evidence supporting "the *claim* for which the petition was brought." *Simmons v. Sec'y of Health & Hum. Servs.,* 875 F.3d 632 (Fed. Cir. 2017); *see also Chuisano v. Sec'y of Health & Hum. Servs.*, 116 Fed. Cl. 276, 286 (2014) (citing *McKellar v. Sec'y of Health & Hum. Servs.,* 101 Fed. Cl. 297, 303 (2011)). "Reasonable basis" is not explicitly defined in the Vaccine Act or Rules. Section 15(e) of the Vaccine Act explains that the petition must include "an affidavit, and supporting documentation, demonstrating that the person who suffered such injury" receive a covered vaccine in the United States; sustained a vaccine-caused injury that lasted more than six months; and has not collected damages in a previous claim. § 300aa-11(c)(1). Here, the parties' dispute centers on whether there is sufficient evidence of a vaccine-caused injury.

Deciding whether a claim has a reasonable basis "is within the discretion of the Special Master . . . ." *Simmons*, 875 F.3d at 632 (internal citations omitted). Reasonable basis can be present when a case is filed and can be lost as more information comes to light. *Chuisano*, 116 Fed. Cl. at 289.

A reasonable basis determination is based on a totality of the circumstances inquiry that can be satisfied by reviewing the factual, medical, and jurisdictional support for a claim.[13] *See Cottingham v. Sec'y of Health & Hum. Servs.*, 971 F.3d 1337, 1344–45 (Fed. Cir. 2020); *Chuisano*, 116 Fed. Cl. at 288. The amount of objective evidence that satisfies reasonable basis is more than a scintilla of evidence but less than preponderant evidence. *Cottingham*, 971 F.3d at 1344–45

---
[13] The jurisdictional support for Petitioner's claim is not at issue in this case and therefore, will not be addressed.

(clarifying that "the failure to consider objective evidence presented in support of a reasonable basis for a claim would constitute an abuse of discretion."). Thus, petitioners must offer more than an unsupported assertion that a vaccine caused the injury alleged. *See, e.g.*, *Cortez v. Sec'y of Health & Hum. Servs.*, No. 09-176V, 2014 WL 1604002, at *5 (Fed. Cl. Spec. Mstr. Mar. 26, 2014); *McKellar*, 101 Fed. Cl. at 303–04. Special masters cannot broadly categorize all petitioner affidavits as subjective evidence or completely refuse to consider a petitioner's sworn statements when evaluating reasonable basis. *See James-Cornelius v. Sec'y of Health & Hum. Servs.*, 984 F.3d 1374, 1379–81 (Fed. Cir. 2021) (holding that factual testimony, when corroborated by medical records and a package insert, can amount to relevant objective evidence for supporting causation.). However, a petitioner's own statements cannot alone support reasonable basis and special masters may make factual determinations as to the weight of evidence. *See, e.g.*, *Chuisano*, 116 Fed. Cl. at 291; *Foster v. Sec'y of Health & Hum. Servs.*, No. 16-1714V, 2018 WL 774090, at *3 (Fed. Cl. Spec. Mstr. Jan. 2, 2018); *Cottingham*, 971 F.3d at 1347.

Petitioners must "affirmatively demonstrate [the] reasonable basis" of their claim through some objective evidentiary showing. *McKellar*, 101 Fed. Cl. at 305. The objective evidence in the record must also not be so contrary that a feasible claim is not possible. *Cottingham v. Sec'y of Health & Hum. Servs.,* 154 Fed. Cl. 790, 795 (2021) (citing *Randall v. Sec'y of Health & Hum. Servs.,* No. 18-448V, 2020 WL 7491210, at *12 (Fed. Cl. Spec. Mstr. Nov. 24, 2020) (finding no reasonable basis when petitioner alleged a SIRVA injury in his left arm though the medical records indicated that the vaccine was administered in petitioner's right arm.)). The Court has held this includes the factual basis of the claim and any medical evidence supporting that claim. *See Cottingham*, 971 F.3d at 1344–45; *see also Chuisano*, 116 Fed. Cl. at 287 (finding that "the reasonable basis inquiry is broad enough to encompass any material submitted in support of the claim at any time in the proceeding, whether with the petition or later."). Indeed, a petitioner's "burden has been satisfied . . . where a petitioner has submitted a sworn statement, medical records, and [a] VAERS report which show that recovery is feasible." *Santacroce v. Sec'y of Health & Hum. Servs.*, No. 15-555V, 2018 WL 405121, at *6 (Fed. Cl. 2018) (citing *Turner,* 2007 WL 4410030, at *6). For purposes of establishing reasonable basis, medical records can support causation even where the records provide only circumstantial evidence of causation. *Cottingham*, 971 F.3d at 1346 (citing *Harding v. Sec'y of Dep't of Health & Hum. Servs.*, 146 Fed. Cl. 381, 403 (Fed. Cl. 2019)); *see also James-Cornelius,* 984 F.3d at 1374 (finding that "the lack of an express medical opinion on causation did not by itself negate the claim's reasonable basis."). After a review of the record, considering the totality of the circumstances, I find Petitioner's case lacked a reasonable basis at the time it was filed.

VI.    **Analysis**

Respondent's argument against reasonable basis in this case is succinct.[14] Petitioner's medical records document the onset of TM symptoms at approximately seven months post vaccination. Respondent contends that this delay is too long for any reasonable conclusion that

---

[14] Respondent mentions that Petitioner only supplied evidence that he purchased the vaccines and not that he received them. Petitioner's proof of purchase and vaccination history contained in his medical records constitutes significantly more than a mere scintilla of evidence to establish proof of vaccination for reasonable basis. This issue deserves no further discussion.

Petitioner's condition is related to his vaccines.

Initially, in response to Respondent's motion to show cause, Petitioner agreed with Respondent and "[did] not contest that the Court has previously held that onset of a demyelinating condition more than eight weeks after vaccination is not medically feasible." Pet'r's Resp. at 3. Petitioner focused instead on the evidence in the record that his symptoms occurred prior to May 15, 2017. *Id.* at 1–3. In response to Respondent's renewed reasonable basis concerns in his opposition to Petitioner's fees motion, Petitioner now contends that "there is at least one scientific paper which presents the possibility that [TM] symptoms may first emerge as much as several years after vaccination." Pet'r's Reply at 1–2. Petitioner further argues that "this amount of evidence – even if not persuasive – amounts to more than was presented in *Cottingham v. HHS*, 971 F.3d 1337 (Fed. Cir. 2020), and is therefore, more than a scintilla of evidence." *Id.*

Petitioner misapplies the Circuit's ruling in *Cottingham*. The Court noted, "[t]o be clear, we make no determination on the weight of the objective evidence in the record or whether that evidence establishes reasonable basis, for these are factual findings for the Special Master and not this [C]ourt." *Cottingham*, 971 F.3d at 1344–45 (citing *Milik v. Sec'y of Health & Hum. Servs.*, 822 F.3d 1367, 1376 (Fed. Cir. 2016) ("we do not reweigh the factual evidence, assess whether the special master correctly evaluated the evidence, or examine the probative value of the evidence or the credibility of the witnesses—these are all matters within the purview of the fact finder." (citation and internal quotation omitted)). The *Cottingham* decision is an instruction that special masters are to consider all types of objective evidence to determine reasonable basis, including but not limited to medical records, witness affidavits, and vaccine package inserts. It is not an exact listing, against which evidence in other cases can be measured and checked off to meet a minimum standard of reasonable basis. Indeed, reasonable basis determinations are very fact specific, and there is no "one size fits all" formula to apply. There was evidence that was filed in *Cottingham* that is not present here and vice versa. Therefore, it is not appropriate to make such a comparison for a reasonable basis determination here.

The article that Petitioner cites is first referenced in his reply to Respondent's opposition to his motion for fees. The article was not filed by Petitioner. The abstract was not filed by Petitioner. The abstract was not completely summarized within Petitioner's filed response, but Petitioner did refer to it. Indeed, when the entire abstract is considered, the quote Petitioner relied on is much more general than his original assertion would imply. The authors

> disclosed [thirty-seven] reported cases of [TM] associated with different vaccines including those against hepatitis B virus, measles-mumps-rubella, diphtheria-tetanus-pertussis and others, given to infants, children and adults. In most of these reported cases the temporal association was between several days and [three] months, although a longer time frame of up to several years was also suggested.

Pet'r's Reply at 3 (citing abstract of N. Agmon-Levin, et al., *Transverse Myelitis and Vaccines: a multi-analysis,* 18(13) LUPUS 1198–204 (2009)). Of note, the authors do not specifically list either the pneumococcal conjugate or influenza vaccines in this abstract. This unfiled, overly vague, and briefly referenced abstract, while objective, does not support Petitioner's claim that TM can be caused by either a PCV-13 or flu vaccine. Petitioner's argument, in theory could be applied to any case in the Program that involved a TM diagnosis if it occurred subsequent to any

9

vaccination. This cannot be the Court's intention for the application of *Cottingham*.

Petitioner also notes that his affidavit describes symptoms that occurred "within three months of vaccination." Pet'r's Resp. at 1. In *James-Cornelius*, the Circuit held that "[w]hile lay opinions as to causation or medical diagnosis may be properly characterized as mere 'subjective belief' . . . , the same is not true for sworn testimony as to facts within the witness's personal knowledge, such as the receipt of a vaccine and the timing and severity of symptoms." *James-Cornelius,* 984 F.3d at 1374. Petitioner's own account that he experienced torso tightening and weakness prior to May of 2017, is evidence that must be considered. However, it must be considered in light of other evidence in the record that is inconsistent with Petitioner's affidavit. *See Goodgame v. Sec'y of Health & Hum. Servs.,* No. 17-339V, 2021 WL 1940817 (Fed. Cl. Spec. Mstr. Apr. 16, 2021) (finding that Petitioner failed to establish a reasonable basis because Petitioner's affidavit was inconsistent with medical records that showed Petitioner told treaters that she was not experiencing shoulder pain), *mot. for rev. denied,* No. 17-339V, 2021 WL 5365635 (Fed. Cl. 2021). In fact, the inconsistencies among Petitioner's various accounts, including to medical providers and within his petition, when compared to each other, are too substantial to constitute sufficient, objective evidence to establish reasonable basis.

The petition filed in this case provides a detailed account of Petitioner's vaccinations, his "symptoms of generalized fatigue, body aches and fever" on February 13, 2017, and his May 15, 2017 urgent care visit wherein he suffered from paralysis and numbness. At no point does Petitioner mention in his petition that he suffered from any symptoms within the first three months post vaccination. Furthermore, Petitioner's wife filed an affidavit that stated she was unaware that he suffered from any symptoms until "[h]e began to feel unwell," leading into his May 2017 paralysis and numbness. Pet'r's Ex. 2 at 1.

Petitioner also spoke to his doctors on several occasions following his vaccination. He did not mention that he suffered from torso tightening and weakness within three months post vaccination during either of his February 2017 medical visits. He also did not mention these symptoms during his visit to urgent care in May of 2017. Respondent noted that Petitioner's medical records describe him as "normal" and "asymptomatic" prior to his May 2017 urgent care visit. Indeed, Petitioner provided these descriptions to his treaters in his medical history. His reports to medical professionals were made contemporaneously with the symptoms and in pursuit of proper treatment, which ultimately led to his TM diagnosis. Such reports to medical providers carry an indicia of reliability that is simply not present with Petitioner's statement made years later in contemplation of litigation.

Lastly, Petitioner argues that his allergic reaction to the anesthesia he received during a dental procedure in February of 2017 was more consistent with the onset of TM. Petitioner describes feeling shaky with body aches and lightheadedness. He then argues that symptoms of TM, specifically pain, weakness, and sensory alterations, are more like his symptoms than symptoms of an allergic reaction, which include urticaria, erythema, and itching. Petitioner does not explain how shakiness, body aches, and lightheadedness are similar to pain, weakness, and sensory alterations. He does not provide support that the symptoms he experienced are associated with TM. Petitioner's medical records to do not suggest that his doctors thought he was suffering from any demyelinating illness in February of 2017. Furthermore, the treatment that Petitioner received, an antihistamine that is used specifically to treat allergic reactions, completely resolved

his symptoms. Pet'r's Ex. 4-1 at 331. While Petitioner argues that "any resolution of symptoms would be coincidental to the use of Benadryl," it defies reason that Petitioner was diagnosed for a specific condition, treated for said condition, and then said condition went away, coincidentally. This coincidence is even more incredulous in light of the fact that these same symptoms never returned, including when Petitioner exhibited other symptoms that are consistent with TM, which led to his diagnosis.

Petitioner's self-described evidence of causation includes: (1) an account of symptoms first and only mentioned in an affidavit drafted in contemplation of litigation; (2) an argument that his symptoms, that were wholly consistent with his treater's allergic reaction diagnosis and inconsistent with TM, were in fact misdiagnosed; and (3) an incomplete summary of an unfiled abstract that does not address whether the specific vaccines at issue in this case can cause TM several months or even years post vaccination. This evidence, along with Petitioner's medical records and the statement from his wife, have been carefully considered for the limited purpose of determining whether there is more than a mere scintilla of objective evidence of causation filed in this case. I find after a comprehensive review of the record that Petitioner has not provided sufficient evidence to establish reasonable basis in this case. Specifically, Petitioner did not provide more than a mere scintilla of evidence that his TM developed prior to seven months post vaccination or that a seven-month delay in onset is medically appropriate to establish vaccine-causation. Petitioner's claim, as filed, is not feasible.

## VII. Conclusion

I find that Petitioner has not alleged facts sufficiently supported by objective evidence to demonstrate a reasonable basis for his claim. To support a finding of reasonable basis, Petitioner must present more than his own assertion that a vaccine caused the alleged injury. Petitioner's claim is insufficiently supported by medical records or literature. Furthermore, his affidavit is inconsistent with his petition and prior statements. When the complete record is considered, including Petitioner's own statements to treating physicians, there is insufficient evidence for a finding of reasonable basis. Therefore, I hereby **DENY** Petitioner's motion for attorneys' fees and costs. In the absence of a motion for review filed pursuant to RCFC Appendix B, the clerk of court is directed to enter judgment herewith.[15]

**IT IS SO ORDERED.**

s/Herbrina D. Sanders
Herbrina D. Sanders
Special Master

---

[15] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by each party, either separately or jointly, filing a notice renouncing the right to seek review.